

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2002

# D'Amico v. CBS Corp

Precedential or Non-Precedential: Precedential

Docket No. 01-3956

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"D'Amico v. CBS Corp" (2002). *2002 Decisions.* Paper 410.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/410

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 18, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3956

NICK J. D'AMICO; CLIFF HOLLIHAN;
JOSEPH G. MUTO; KEVIN BEAM,
        Appellants

v.

CBS CORPORATION, f/k/a WESTINGHOUSE, INC;
THE WESTINGHOUSE ELECTRIC COMPANY
PENSION PLAN

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 00-cv-02495)
District Judge: Honorable Donetta W. Ambrose

Argued May 3, 2002

Before: ROTH and STAPLETON, Circuit Judges
POLLAK*, District Judge

(Filed: July 18, 2002)

_____

* Honorable Louis H. Pollak, District Court Judge for the Eastern District
of Pennsylvania, sitting by designation.


        Colleen E. Ramage, Esquire
        Ramage & Valles
        429 Forbes Avenue
        Allegheny Building, Suite 800
        Pittsburgh, PA 15219

        Gary F. Lynch, Esquire
        36 North Jefferson Street
        P.O. Box 7635
        New Castle, PA 16107

        Theodore Goldberg, Esquire
        David B. Rodes, Esquire (Argued)
        John T. Tierney, III, Esquire
        Goldberg, Persky, Jennings & White,
         P.C.
        1030 Fifth Aenue
        Pittsburgh, PA 15219

         Attorneys for Appellants

        Glen D. Nager, Esquire
        Jack W. Campbell, IV, Esquire
         (Argued)

Jones, Day, Reavis & Pogue
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Amy E. Dias, Esquire
Jones, Day, Reavis & Pogue
31st Floor, One Mellon Bank Center
500 Grant Street
Pittsburgh, PA 15219

Attorneys for Appellees

OPINION OF THE COURT

ROTH, Circuit Judge:

This ERISA case requires us to apply our recent decision in Harrow v. Prudential Ins. Co., 279 F.3d 244 (3d Cir. 2002), to determine whether plaintiffs, the D'Amico claimants, must exhaust plan remedies before proceeding

with breach of fiduciary duty claims against their former employer, defendant CBS, Inc. See S 404 of ERISA, 29 U.S.C. S 1104(a).

The District Court granted summary judgment dismissing plaintiffs' unexhausted claims. We will affirm that decision. We find that plaintiffs are required to exhaust Plan remedies because their fiduciary allegations, which are based on CBS's failure to comply with a vesting and partial termination provision in its Plan, amount to a claim for plan benefits under Harrow. We also find that plaintiffs have failed to meet their burden of establishing that Plan remedies are futile. Finally, we see no reason to upset the District Court's grant of summary judgment in favor of CBS.

I. Facts

Plaintiffs are a class of former employees of CBS (formerly known as Westinghouse) and participants in the Westinghouse Pension Plan. Section 18.B. of the Westinghouse Pension Plan contains the following provision for termination or partial termination of the Plan:

> If the Plan is terminated, or partially terminated, the rights of affected participants to benefits accrued under the Plan shall be nonforfeitable to the extent funded.

This language tracks 26 U.S.C. S 411(d)(3), 1 which, in order for employers to obtain favorable tax treatment for pension plans, requires the employers to include in their plans provisions for vesting upon partial termination.

From 1994 through 2000, Westinghouse implemented a systematic planned reduction of its entire workforce. As

1. 26 U.S.C. S 411 (d)(3) provides that:

> a trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that --
>
> (A) upon its termination or partial termination . . . the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable.

3

part of this downsizing effort, and a concurrent effort to reduce a four billion dollar underfunding of the Plan, the company also amended its Plan in 1994 to eliminate a lump-sum option formerly available to retiring employees.

## II. Procedural History

Although the Plan provides a procedure for presenting claims for benefits, none of the plaintiffs attempted to exhaust this Plan remedy before bringing suit. Plaintiffs filed their initial complaint on December 22, 2000, and an amended complaint on July 26, 2001. They allege, inter alia, that the workforce reduction and elimination of future benefit accruals through the 1994 amendment constituted a partial termination that entitled all non-vested participants to become vested. Plaintiffs claim that CBS's failure to provide vesting after these partial terminations constituted a breach of its fiduciary duties under section 404 of ERISA, 29 U.S.C. SS 1104(a)(1)(A) & (a)(1)(D).  The complaint requests damages and declaratory relief to remedy these violations. It also alleges that exhaustion would be futile.

CBS filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), based on plaintiffs' failure to exhaust Plan remedies. The District Court determined that it was more appropriate to address CBS's motion under Fed. R. Civ. P. 12 (b)(6) and converted the motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56.

Plaintiffs opposed CBS's motion on the ground that they are not required to exhaust Plan remedies before bringing their suit. The District Court disagreed and granted summary judgment for CBS on the unexhausted claims. It entered an order dismissing the case with prejudice on October 1, 2001. Plaintiffs filed a timely notice of appeal.

## III. Jurisdiction and Standard of Review

This case arises under ERISA, 29 U.S.C. S 1001 et seq.; thus the District Court had federal question jurisdiction under 28 U.S.C. S 1331 and 29 U.S.C. S 1132(e). We have appellate jurisdiction under 28 U.S.C. S 1291, as the

4

District Court entered a final and appealable order granting CBS's motion for summary judgment with prejudice.

We exercise plenary review over an appeal from a grant of summary judgment; we review de novo the applicability of exhaustion principles to plaintiffs' claims. Harrow v. Prudential Life Ins. Co., 279 F.3d 244, 248 (3d Cir. 2002). We review for abuse of discretion both the District Court's decision to deny a futility exception to exhaustion principles, see id., and its decision to grant summary judgment rather than entering a stay to allow exhaustion of administrative remedies. St. Surin v. Virgin Island Daily News, Inc., 21 F.3d 1309, 1313 (3d Cir. 1994) (abuse of discretion standard applies when "an order entering summary judgment is attacked as premature"); Lindemann v. Mobil Oil Corp., 79 F.3d 647, 651 (7th Cir. 1996) ("decision whether to stay [an ERISA proceeding to allow exhaustion] is entirely within the District Court's discretion").

IV. Discussion

Plaintiffs raise three arguments in their appeal. First, they assert that they are not required to exhaust plan remedies before bringing suit; second, they assert that exhaustion would be futile; and, finally, they argue that the District Court erred when it granted summary judgment rather than staying their case and ordering expedited administrative review. We will explain, below, why none of these arguments merit reversal.

A. Exhaustion of Plan Remedies.

This Circuit requires the exhaustion of Plan remedies in some, but not all, ERISA cases.2 In Zipf v. AT&T, 799 F.2d 889 (3d Cir. 1986), we drew a distinction between claims to enforce the terms of a benefit plan and claims to assert rights established by the ERISA statute. Id. at 891.

_____

2. As we noted in Harrow, the Courts of Appeals are in "sharp disagreement" over whether certain ERISA claims should be excused from exhaustion requirements. 279 F.3d at 253 n.10 (comparing rule applied by the Third, Fourth, Ninth and Tenth Circuits with rule applied by the Seventh and Eleventh Circuits).

5

Exhaustion of Plan remedies is required in the former, but not the latter, category of cases. Id.3 Since Zipf, a vast majority of cases waiving the exhaustion requirement have fallen in two categories: (1) discrimination claims under section 510 of ERISA, or (2) failure to provide plaintiffs with Summary Plan Descriptions, as required by ERISA. Harrow v. Prudential Ins. Co., 279 F.3d 244, 253 (3d Cir. 2002).

More recently, we have also recognized the possibility of

waiving exhaustion in cases where statutory rights stem from the fiduciary duties set forth in section 404 of ERISA, 29 U.S.C. S 1104(a). See Harrow, 279 F.3d at 253-54. The exhaustion requirement for these section 404 claims arises from the fact that some of the duties established by section 404 are synonymous with a claim to enforce the terms of a benefits plan. The section describes how a " fiduciary shall discharge his duties with respect to a plan." 29 U.S.C. S 1104(a)(1). It also requires the fiduciary to discharge those duties for the purpose of "providing benefits  to participants," and "in accordance with the documents and instruments governing the plan." 29 U.S.C. SS 1104(a)(1)(A) & (a)(1) (D) (emphases added). Thus, we still require exhaustion in cases where the alleged statutory violation-- a breach of fiduciary duty under section 404--is actually a claim based on denial of benefits under the terms of a plan.

Exhaustion requirements for fiduciary allegations brought under section 404, therefore, hinge on whether the allegations amount to a claim for plan benefits. In Harrow, we explained that alleged fiduciary breaches involve a claim for benefits when "resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan

_____

3. In general, plaintiffs bring claims to enforce the terms of a benefits plan under 29 U.S.C. S 1132(a)(1)(B) and claims to enforce rights established by ERISA under 29 U.S.C. S 1132(a)(3). Section 1132(a)(3) claims to enforce statutory rights are not automatically excused from exhaustion, however. We still require exhaustion where the statutory claim "merely recasts [a] benefits claim in statutory terms." Harrow, 279 F.3d at 252. Thus, while the District Court assumed that plaintiffs wished to proceed under S 1132(a)(3), and plaintiffs rely on S 1132(a)(3) for purposes of appeal, our exhaustion analysis turns on whether plaintiffs' statutory allegations amount to a claim for benefits under the terms of the Westinghouse Plan.

6

rather than on an interpretation and application of ERISA" itself. 279 F.3d at 253-54 (quoting Smith v. Syndor, 184 F.3d 356, 362 (4th Cir. 1999)). There, we found that a fiduciary claim, brought under section 404 based on an allegedly wrongfully denial of insurance coverage for Viagra, amounted to a claim for benefits. Id. at 254.4

Here, plaintiffs allege section 404 fiduciary breaches based on CBS's failure to vest after (1) the elimination of a significant number of Plan participants, which allegedly created a partial termination and required vesting under the Plan and under 26 U.S.C. S 411 (d)(3); and (2) a partial termination based on elimination of future benefit accruals under the 1994 amendments to the Plan.5  See, e.g., Gluck v. Unysis Corp., 960 F.2d 1168, 1178 (3d Cir. 1992) (noting that breach of fiduciary duty theory may apply based on "failure to vest fully the accrued benefits upon partial termination of a plan"). The vesting obligations that form the basis of plaintiffs' fiduciary duty claims arise from S 18.B of the Plan.

Although the language of S 18.B tracks the provisions of 26 U.S.C. S 411 (d)(3) and is designed to meet that federal statutory requirement, the terms of section 411 do not provide plaintiffs with a right to vesting independent of the language of the Plan.6 It is, instead, the contractual language of S 18.B of the Plan itself which gives rise to

---

4. In reaching this conclusion, we distinguished the holding from Smith v. Syndor, 184 F.3d 356, 362 (4th Cir. 1999), a case in which exhaustion was not required for allegations establishing a breach of fiduciary duty independent of the denial of benefits. In that case plaintiffs alleged a breach of fiduciary duties based on sales of preferred stock at an undervalued price. Thus, the claims in Smith are distinguishable from the plan benefits sought in Harrow and the instant case.

5. Because plaintiffs have chosen to proceed under 29 U.S.C. S 1132(a)(3), their fiduciary duty claims are limited to equitable relief. Great West Life & Annuity Ins. Co. v. Knudson, 122 S.Ct. 708 718-19 (2002). Thus, even if we held that plaintiffs were not required to exhaust their remedies, they would not be able to recover damages for any of their unexhausted claims.

6. Vornado, Inc. v. Trustees of the Retail Store Employees Union Local 1262, 829 F.2d 416, 418 n. 2 (3d Cir. 1987) (section 411 "does not give plan participants an interest in the employer's tax status").

7

Plaintiffs' vesting rights. Indeed, we have on numerous occasions noted that an employee's right to vesting upon partial termination arises from the terms of an ERISA plan. In Vornado, Inc. v. Trustees of the Retail Store Employees Union Local 1262, we stated that the purpose of section 411 "is to force employers to include language favorable to employees in the plan; thus, employees must sue on the plan language, not on the statute." 829 F.2d at 418 n. 2 (emphasis added); see also Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 151 (3d Cir. 1987) (in order to avoid the severe penalty of loss of section 401 qualification,"all qualifying pension plans contain the assurances required by [section 411, and plaintiffs] can then sue on the basis of the plan language" ),7 affirmed in part and reversed in part on other grounds, 489 U.S. 101 (1989); United Steel Workers of America v. Harris & Sons Steel Co., 706 F.2d 1289, 1299 (3d Cir. 1983) ("the question whether under the terms of the Plan agreement there was a partial termination in 1972 is essentially one of contract interpretation").

Thus, the fiduciary breaches alleged by plaintiffs turn on the application of S 18.B's provisions for vesting. It follows that their allegations amount to a claim for Plan benefits and require exhaustion under Harrow. We will affirm the District Court's ruling that exhaustion of Plan remedies is required for plaintiffs' partial vesting allegations.

B. Is Exhaustion Futile?

Plaintiffs also argue that they are not required to exhaust Plan remedies because it would be futile to do so. A party invoking this exception must provide a clear and positive showing of futility before the District Court. Harrow, 279 F.3d at 249-50. Here, plaintiffs concede that they"never

---

7. Bruch does suggest that one part of this inquiry--whether there has been a partial termination--is subject to independent determination by the court. 828 F.2d at 149. But that does not alter the fact that plaintiffs' ultimate right to vest is based on application of the Plan--a question which should be addressed by the Plan administrator in the first instance. See, e.g., Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1484 (9th Cir. 1995) (prospect of judicial review for compliance with federal statutory provisions does not give claimant license to evade internal appeal to plan administrator).

8

presented their partial termination claims to the Plan Administrator either formally or informally." 8 They assert that no attempts to request benefits are required in light of CBS's longstanding policy of denying that partial termination ever occurred. Our precedent makes clear, however, that Plaintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief. Berger v. Edgewater Steel Co., 911 F.2d 911, 917 (3d Cir. 1990) (agreeing that futility argument lacked merit where employee "never even asked for 70/80 retirement"). Thus, we find that the District Court properly exercised its discretion when it declined to apply the futility exception here.

C. Summary Judgment.

Plaintiffs conclude by arguing that the District Court erred in granting summary judgment rather than staying their case and ordering expedited administrative review. The decision of whether to grant a stay is entirely within the District Court's discretion. Lindemann v. Mobil Oil Corp., 79 F.3d 647, 651 (7th Cir. 1996) (affirming decision to grant summary judgment and deny stay for unexhausted ERISA claims). Here, the District Court refused to grant a stay where the only justification offered by plaintiffs was an appeal to justice and judicial economy, and where none of the plaintiffs had ever attempted to convince Westinghouse administrators that he or she was entitled to vesting. As explained below, we see no reason to interfere with this decision.

Plaintiffs argue, on appeal, that summary judgment is an unduly harsh sanction for losing an exhaustion argument that was made in good faith and under existing case law. We note, however, that the Seventh and Eleventh Circuits have granted summary judgment after rejecting good faith arguments to limit exhaustion requirements. Lindemann, 79 F.3d at 650; J.W. Counts v. American Gen. Life and Accident Ins. Co., 111 F.3d 105, 109 (11th Cir. 1997). Nor

8. Although we note that some of the named plaintiffs made a written request for Job Separation Pension Benefits underS 19 of the Plan, we do not construe this as a request for partial termination benefits under S 18.B. of the Plan.

9

should summary judgment be a surprising result for plaintiffs. As one treatise notes, "[f]ailure to exhaust the review procedures provided by the plan may result in dismissal with prejudice of (or summary judgment upon) any lawsuit brought to challenge a denial of benefits." James F. Jorden, Waldemar J. Pflepsen, Jr., & Stephen H. Goldberg, Handbook on ERISA Litigation S 4.04[B][3][a] (2d ed. 2000 Supplement).9 Thus, Plaintiffs' decision to bring a federal suit rather than pursuing administrative remedies plainly included the possibility of summary judgment based on failure to exhaust. The District Court did not abuse its discretion by exercising that option.

Finally, we see no reason to alter our analysis out of concern that the District Court's order will foreclose future consideration on the merits of their claims. Although we may not "dictate the preclusion consequences" of our decision to future courts, Wright, Miller & Cooper, 18 Federal Practice and Procedure S 4405 (2002), we do have authority to make clear the limited scope of the District Court's decision. Id. at S 4413; Venuto v. Witco Corp., 117 F.3d 754, 759 n.8 (3d Cir. 1997). Here, the District Court issued an order granting summary judgment because of the failure to exhaust. That order is not, however, in any way a ruling on the merits. It is, instead, limited to resolving the threshold question of whether administrative remedies must be exhausted before plaintiffs may bring these claims in federal court. Such orders do not preclude later litigation on the merits of properly exhausted claims. See , 18 Federal Practice and Procedure at S 4436 ("claim preclusion is not proper following dismissal [for] . . . failure to exhaust administrative remedies."). We will not disturb the order entered by the District Court.

---

9. This is not, of course, the only possible outcome. See Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir. 1989) (vacating order entering judgment for defendants and ordering dismissal without prejudice to allow plaintiffs to exhaust plan remedies.) Under the authority discussed in the text, however, we do not find the District Court's decision here to be an abuse of discretion.

10

V. Conclusion

Plaintiffs' breach of fiduciary duty claims are subject to exhaustion requirements because they turn on application of S 18.B. of the Westinghouse Pension Plan and, thus, under Harrow, amount to claims for benefits under the

Plan. Plaintiffs have failed to establish that exhaustion is futile or that the District Court erred in granting summary judgment. We will, therefore, affirm the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11